UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK HOLEMAN, JR.,<br>    *Plaintiff*,<br>v.<br>CITY OF NEW LONDON,<br>    *Defendant*. | No. 3:23-cv-00631-MPS |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Mark Holeman, Jr. brings this action against his former employer, the City of New London ("the City"), alleging it discriminated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60 *et seq.* Holeman claims that the City terminated his employment because of his race and color. ECF No. 1 at 10–12. New London moves for summary judgment on all claims. ECF No. 30. For the reasons that follow, the motion is GRANTED.

**I.    FACTUAL BACKGROUND**

The facts set forth below are taken from the parties' Local Rule 56(a) Statements and exhibits and are undisputed unless otherwise stated.

The Plaintiff, Mark Holeman, Jr., was employed by the City for about three and a half months, from on or about December 7, 2021, until his employment was terminated on or about March 25, 2022. ECF No. 36 ¶¶ 37, 74, 77. Holeman is Black/African-American. *Id.* ¶ 19. Throughout his employment with the City, he worked in the position of Maintainer III in the Highway Division of the City's Department of Public Works ("DPW"). ECF No. 30-1 at 1; 35 at 3. The primary duty of a Maintainer III during the winter was snowplowing. ECF No. 36 ¶ 59; ECF No. 30-2 at 9. Other duties, according to Holeman, included "cold patching, cleaning the

1

shop, maintaining our trucks, putting blades on snowplows, filling in at … solid waste, … pick[ing] up Christmas trees and put[ting] them through the wood chipper … and dump[ing] brush." ECF No. 30-2 at 9. According to the City, the position "covers all activities that are involved in street maintenance." ECF No. 30-3 at 2–3.

DPW employees are members of a union, Local #1387 of Council #4 ("the Union."). ECF No. 36 ¶ 16. Holeman's employment was probationary for the first 180 days under the City's policies and procedures and the collective bargaining agreement between the Union and the City. *Id.* ¶ 38. Although the City contends that probationary employees are "at-will" and may be terminated for any lawful reason, Holeman disagrees. *Id.* ¶ 18. Under the union contract, employees who have completed their probationary period can be fired only for just cause. *Id.* ¶ 46.

### A. Hiring

Holeman first applied for the Maintainer III position in September 2020 and was interviewed by Director of Public Works Brian Sear, Superintendent David DeNoia, and crew leader Rick Mercado. *Id.* ¶¶ 20, 25. Personnel Director Tina Collins was also involved in the hiring process. *Id.* ¶ 30. The City did not hire Holeman at that time, though one year later, Collins reached out to Holeman about the position, *id.* ¶¶ 31–33, and Holeman again interviewed with Sear, DeNoia, and Mercado. *Id.* ¶ 35.

The parties agree that before and during Holeman's employment, the DPW was "dysfunctional," with a "somewhat challenging and negative environment" and "insecure employees." ECF No. 30-1 at 12; No. 35 at 3. During the interview, Sear, DeNoia, and Mercado were "very impressed" with Holeman's "capabilities and experience," ECF No. 36 ¶ 36, and hoped that he would not participate in the conduct that was contributing to the dysfunction, *id.* ¶ 86.

The City hired Holeman on Sear's recommendation and upon approval from Collins. *Id.* ¶ 37. Sear is white/Caucasian, ECF No. 16 ¶ 8; Collins is Black/African-American, ECF No. 36 ¶ 7.[1] Plaintiff's hire letter stated that his probationary period was 180 days, and that "[p]ermanent employment shall be contingent upon your satisfactory performance of the duties as Maintainer III." *Id.* ¶ 39; ECF No. 30-9 at 1.

**B. Employment**

At his deposition, Holeman testified that, on his first day of work for the City, Sear and DeNoia told him that some DPW employees were "stuck in their ways," and that he should "fall in line" and "just do as [he]'s told [and] everything would be fine." ECF No. 36 ¶ 44; ECF 30-2 at 8. The employees who were "stuck in their ways" included Rich Richmond, who is white/Caucasian, and Okoi Tucker, who is Black/African-American. ECF No. 36 ¶ 45. Both Richmond and Tucker had previously completed their probationary period of employment. *Id.* ¶ 46.

During Holeman's employment, at least four people—Richmond; Quincy Jones, a DPW employee who is Black/African-American and who provided a reference for Holeman's initial employment application; Peter Mercuri, a DPW employee who is white/Caucasian; and New London Chief of Police Brian Wright, who is Black/African-American—warned Plaintiff against causing trouble or "ruffling feathers" within the DPW. *Id.* ¶¶ 21, 47.

Despite these warnings, Holeman questioned the work of Wayne Burroughs, DPW's head mechanic, who then became "agitated with" Holeman and reported the incident to Sear. *Id.* ¶¶ 51–53; ECF No. 30-4 at 3. Mercardo and DeNoia also reported difficulties with Holeman to Sear. ECF No. 36 ¶ 55. These reports included Holeman's failing to follow instructions, "push[ing]

---

[1] Mercardo's and DeNoia's race and color are not described in the record.

back" on assignments, and "constantly question[ing] his job duties." *Id.* ¶¶ 54, 56. In one instance, the City recalled Holeman to resume plowing roads during a snowstorm on February 13, 2022, the night of the Super Bowl; Holeman did not answer his phone. *Id.* ¶ 60; ECF Nos. 30-2 at 28; 30-4 ¶ 28. Holeman contends he did not "receive the phone call as he was at a location without service." ECF No. 36 ¶ 60. The next month, following a St. Patrick's Day parade, Holeman argued on a phone call with DeNoia "about whether he was required to come in, for how long he had to be in, and what his pay would be if he did come in." *Id.* ¶ 63. In this conversation, which Sear overheard, Holeman told DeNoia that "it didn't make sense for me to come in if it was only going to be for two hours" and refused to perform the assignment as described. *Id.* ¶ 63, 65–67.

### C. Allegations

In support of his discrimination claims, Holeman points to four verbal comments from DPW employees.

Holeman alleges that, in separate incidents, Mercuri and Mercado told him to "stay away" from Tucker, a Black co-worker. ECF No. 1 ¶ 7. Tucker was among the DPW employees who were perpetuating a negative work environment. ECF No. 36 ¶ 85. Holeman was not told to stay away from any other Black DPW employee. *Id.* ¶ 83. Holeman testified at deposition that he believes Mercuri and Mercado did not like Tucker. *Id.* ¶ 88. Asked why he believed Mercuri and Mercado did not like Tucker, Holeman cited an earlier comment by Richmond that Holeman and Tucker "pose a threat." *Id.*; ECF No. 30-2 at 21–22. The parties agree that Holeman and Tucker "posed a threat because of the knowledge and experience that they had, as well as their skills, mindset, and work ethic." ECF No. 36 ¶ 89. Holeman further testified, however, that he understood Richmond's comment to mean that Holeman "posed a threat that no one wants to be working underneath a Black person [sic]. Nobody wants to feel beneath a Black person." ECF

4

No. 30-2 at 23. Holeman acknowledged at his deposition that Richmond did not *say* that race was a factor in the "threat" he posed but, rather, that was "what I took it as." *Id.*

Holeman also alleges that a co-worker, Matt Jullarine, told him and Tucker, who are both Black, that there was a "different set of rules" for Black employees. ECF No. 1 ¶ at 6. It is undisputed that Jullarine did not supervise Holeman or participate in the decision to terminate Holeman, ECF No. 36 ¶ 78–80, and that Holeman did not complain or otherwise inform Sear or Collins about Jullarine's comment, *id.* ¶ 81.

### D. Termination

Following the St. Patrick's Day parade incident, Sear asked Holeman's supervisors, Mercado and DeNoia, for recommendations regarding Holeman's employment. *Id.* ¶ 70. Mercado and DeNoia "were very clear on . . . their recommendations that [it was] best for all of us [] not to offer [Holeman] permanent employment." *Id.* Sear then communicated to Collins that he recommended terminating Holeman's employment. *Id.* ¶ 72. Collins made the final decision to terminate Holeman. *Id.* ¶ 73. Holeman was informed at a meeting with Collins and Sear that he would not be offered permanent employment and that his probationary employment was terminated. *Id.* ¶ 75. The City replaced Holeman with Anthony Greco, a white/Caucasian man. ECF No. 1 at 11 ¶ 10; No. 30-1 at 11.

### E. Procedural History

Holeman filed his Complaint in Connecticut Superior Court, alleging that the City discriminated against him and terminated his employment because of his race and color in violation of Title VII and CFEPA. ECF No. 1 at 10–14. He has not pled any other claim. After removing the case to this Court, the City answered and moved for summary judgment. Holeman filed an objection, and the City replied. ECF Nos. 34, 39.

## II. LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (internal quotation marks and citations omitted). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Id.* (internal quotation marks omitted).

Because Holeman has presented no direct evidence of discrimination, I must analyze both his Title VII and CFEPA claims, which rely on circumstantial evidence, under the three-step *McDonnell Douglas* burden-shifting framework. *See Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973) to plaintiff's

Title VII and CFEPA claims); *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) ("The analysis of discrimination and retaliation claims under CFEPA is the same as under Title VII."). Under this analysis, the Plaintiff must first "establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Bart*, 96 F.4th at 570 (internal quotation marks omitted). If the Plaintiff has established his *prima facie* case, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its adverse action." *Id.* If the employer articulates such a reason, then the burden shifts back to the plaintiff to show at the third step either that "the employer's stated justification for its adverse action was nothing but a pretext for discrimination," or that, "even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action." *Id.* at 578.

### III. DISCUSSION

Holeman alleges that the City terminated him because of his race and color. ECF No. 1 at 11–12. The parties do not contest that the first two steps in the *McDonnell Douglas* burden-shifting framework have been satisfied, in that Holeman has made a *prima facie* case of discrimination, and the City has offered a non-discriminatory reason for terminating Holeman. ECF No. 30-1 at 11; No. 35 at 7. As explained below, I agree that the parties have met their burdens with respect to the first two *McDonnell Douglas* steps. I find, however, that Holeman has not carried his burden at the third step.

#### A. Prima Facie Case

Holeman has alleged he is (1) a member of a protected class, ECF No. 1 at 10 ¶ 1; (2) met the minimum job qualifications, *id.* at 10 ¶ 4; (3) suffered an adverse employment action when he

7

was terminated, *id.* at 11 ¶ 8; and (4) was replaced by an employee outside of his protected class, *id.* at 11 ¶ 10, all of which gives rise to an inference of discrimination at the *prima facie* stage, *Littlejohn v. City of New York*, 795 F.3d 297, 312–13 (2d Cir. 2015). Holeman has thus met his burden at the first step, establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination.

### B. Nondiscriminatory Reason

At the second step, a defendant's burden to produce a legitimate, non-discriminatory reason "is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks and citation omitted). The City has produced evidence in the form of deposition testimony that it hired Holeman expecting that, through his skill and knowledge, he would help the DPW's Highway Division—and in particular that he would help the City combat, or at least avoid perpetuating, the negative attitudes of the employees within the division—and that it terminated Holeman for failing to meet those expectations. ECF No. 30-2 at 24–25; No. 30-3 at 6–12, 17, No. 36 ¶¶ 85–86. The City has also produced affidavits from Sear and Collins stating that Holeman was insubordinate. ECF No. 30-4 at 2; No. 30-5 at 2. The City has met its burden of production.

### C. Pretext

Holeman opposes summary judgment at the third step of the *McDonnell Douglas* framework, in which he has the burden of showing that the City's proffered reason is pretextual and that his termination was at least partially motivated by invidious discrimination. ECF No. 35 at 7–16. For the following reasons, I find that Holeman fails to raise a genuine dispute that the City's proffered reason was pretext for race or color discrimination or that such discrimination was otherwise a motivating factor in his termination.

8

1. Richmond's Comment

The parties agree that "Plaintiff and Mr. Tucker posed a threat because of the knowledge and experience that they had, as well as their skills, mindset, and work ethic." ECF No. 36 ¶ 89 (citing Holeman's deposition testimony, ECF No. 30-2 at 22–23). Although this statement does not mention Holeman's race or color, Holeman argues that "Defendant's admission that its employees felt threatened by the professional prowess of two [B]lack men goes a long way toward establishing that Plaintiff's termination was based on racial motivations," and is sufficient to carry its burden of demonstrating pretext. ECF No. 35 at 8. I disagree.

The only evidence of record to support the Rule 56 statement that Holeman and Tucker "posed a threat" comes from Holeman's deposition testimony, in which he related a conversation with Richmond, a White employee. ECF No. 30-2 at 22. According to Holeman, "[Richmond] said because of the knowledge that I had, that I was more knowledgeable than anybody in our group. I knew what was going on with -- mechanically to everything. The aspects of the job. He said I posed a threat." *Id.* During the deposition, Holeman was asked to what he posed a threat, and he responded, "I don't know what he meant by that. . . . I don't know how to take that, to be honest. I took it as because of the skills and mindset and our work ethic." *Id.* at 22–23. A moment later, however, Holeman offered a different reason, saying: "[W]hat I took it as -- I posed a threat that no one wants to be working underneath a Black person [sic]. Nobody wants to feel beneath a Black person." *Id.* at 23. Asked then whether anyone had said that to him, Holeman responded: "No, not in those words." *Id.*

Even when all reasonable inferences are drawn in favor of the plaintiff, this comment does not support a conclusion that any "threat" perceived by Richmond was racially motivated. "[S]peculation by the party resisting the motion will not defeat summary judgment." *Kemp v.*

9

*Regeneron Pharms., Inc.*, 117 F.4th 63, 68, (2d Cir. 2024).  "[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).  Holeman conceded at his deposition that the purported racially motivated reason for Richmond's comment ("a threat that no one wants to be working underneath a Black person") was Holeman's own speculation about what Richmond intended by the comment—"what [he] took it as."  This speculation is not supported by any admissible evidence that would allow a reasonable jury to find that Richmond's comment was motivated by race, such as testimony by Holeman about Richmond's demeanor, tone, or body language.  Nor has Holeman offered any admissible evidence that any threat felt by Richmond or any co-workers was related to Holeman's race.[2]  *Brown*, 654 F.3d at 358 (party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation"); *see Kemp*, 117 F.4th at 70 (affirming summary judgment where plaintiff cited no admissible evidence beyond her own inadmissible "subjective speculation and views").  Absent Holeman's speculation, the City's admission that he "posed a threat because of [his] knowledge and experience" does nothing to suggest that race motivated Richmond's

---

[2] Holeman appears to argue that because the City states in its Rule 56 Statement that *both* Holeman and Tucker "posed a threat," and both Holeman and Tucker are Black, that this common link permits the reasonable inference that their race motivated Richmond's comment.  ECF No. 35 at 8 (citing ECF No. 36 ¶ 89).  "[T]he court will take as true relevant facts [in a Rule 56 Statement] that are supported by admissible evidence in the record but will not credit statements or portions of statements that are unsupported by the evidence cited."  *Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 127 (D. Conn. 2013).  The portion of Paragraph 89 indicating that Tucker also posed a threat is not supported by any evidence; Holeman indicated that he could not recall whether Richmond said both he and Tucker posed a threat, or whether Holeman alone posed a threat.  ECF No. 30-2 at 23.  As such, I need accept as true only that Richmond said that Holeman "posed a threat," and I will not credit the portion of the statement that Richmond also said that Tucker "posed a threat."  Even if I were to credit the full statement, however, the notion that Richmond's comment was motivated by race or conveyed racial bias remains Holeman's own speculation and is therefore insufficient to defeat summary judgment.  *Brown*, 654 F.3d at 358.

10

comment or was a factor in Holeman's termination, or that the City's proffered reason for Holeman's termination was not its true reason. Rather, it suggests only that Holeman posed a threat for the nondiscriminatory reasons stated, which are consistent with the City's hope in hiring Holeman that his "capabilities and experience . . . and abilities," ECF No. 36 ¶ 36, would be effective in reducing the dysfunction and negative work environment to which Richmond was contributing, *id.* ¶¶ 84–86. For these reasons, Richmond's comment does not support Holeman's burden to demonstrate that race was a factor in Holeman's termination or the City's proffered reason is pretext.[3]

2. Mercuri's and Mercado's Comments

Relatedly, there is also no evidence that race was a factor in Mercuri's comment, followed by Mercado's comment, instructing Holeman to "stay away" from Tucker, his Black co-worker. See ECF No. 30-2 at 11. Holeman testified at deposition that after Mercuri noticed Holeman having lunch with Tucker, Mercuri told Holeman "to stay away from [Tucker]. You're burning the bridges or stepping on people's toes and people are going to get upset and notice it." ECF No. 30-2 at 11. Holeman then testified that "when [Mercuri] first said it, I didn't assume it was because [Tucker] was Black," and only did "assume it" after Mercardo also told him to stay away from Tucker in a separate incident. *Id.* As to that incident, Holeman testified that Mercardo's comment came "[b]ecause, personally, I don't think anyone likes [Tucker] in that group"; he also testified

---

[3] In its reply brief, the City also argues that Richmond's remark is a non-probative "stray remark," as it was not made by a decision maker or in the context of the decision making process. ECF No. 39 at 3–4; *see Pronin v. Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 638 (S.D.N.Y. 2005). In support, the City attached a "Second Affidavit of Tina Collins" asserting that Richmond did not act in a supervisory capacity toward Holeman. ECF No. 39-1. The Court will not accept new evidence attached to a reply brief. *See* D. Conn. L.R. 7(d) ("A reply brief . . . must be strictly confined to a discussion of matters raised by the responsive brief . . . ."). I need not decide if Richmond's comment qualifies as a "stray remark," as I find the remark does not show that race was a factor in Holeman's termination or the City's proffered reason is pretext.

that no one liked Tucker "because he's Black." *Id.* at 21–22. The only reason Holeman provided for his opinion as to why no one liked Tucker was the "threat" remark from Richmond, which, as noted above, Holeman merely speculated was related to race. *Id.* at 22.

As with Richmond's comment, even when all reasonable inferences are drawn in favor of the plaintiff, Mercuri's and Mercado's instructions that Holeman "stay away" from Tucker does not support a conclusion that these comments were racially motivated. To the contrary, instructions to stay away from Tucker, who was among the DPW employees who "were perpetuating a negative work environment," ECF No. 36 ¶ 85, is consistent with the City's goal in hiring him that Holeman "would contribute positively to [the workplace] culture and environment and refrain from perpetuating or exacerbating some of the environmental factors that were present." ECF No. 30-3 at 6–7. And Mercuri's comment warning Holeman that he was "burning the bridges or stepping on people's toes and people are going to get upset" is consistent with both (1) similar warnings that Holeman received from three other people who warned Plaintiff against causing trouble or "ruffling feathers" within the DPW, ECF No. 36 ¶ 47; and (2) the incident in which Holeman agitated Burroughs, the DPW's head mechanic, by questioning his work, *id.* ¶¶ 50–52.

Again, Holeman provides no evidence beyond his speculation that Mercuri and Mercardo told him to stay away from Tucker because Holeman and Tucker were members of the same protected class. Holeman attempts to create a genuine issue of fact by stringing together a chain of speculation—that Richmond was referring to race when saying Holeman posed a threat, and that Mercuri and Mercardo had this same race-based threat in mind when they told Holeman to stay away from Tucker. ECF No. 30-2 at 22–23 ("You asked a question about [why nobody likes] Okoi [Tucker], and I said the only thing I can assume is what Richmond told me, because we posed

12

a threat."). Without evidence tying these incidents to race, this speculation does not suggest that race was a factor in Holeman's termination or that the City's proffered reason for Holeman's termination was pretext. *See Brown*, 654 F.3d at 358; *Kemp,* 117 F.4th at 68; *Schwapp*, 118 F.3d at 110.[4]

### 3. Nature and Terms of Employment

Holeman argues that he was a party to an employment contract with the City, that the City failed to follow its policies regarding the evaluation and firing of temporary employees, and that the City's "failure to adhere to its policy creates a question of fact as to its true motivations in firing Plaintiff." ECF No. 35 at 2. Specifically, Holeman argues that "the language of the Personnel Manual created an employment contract that required certain protocols for the termination of an employee. . . . None of these protocols were followed, which leads to a reasonable implication that there were other motivating factors, such as race, that contributed to Plaintiff's termination." *Id.* at 9.

---

[4] Although Holeman does not discuss the issue in his brief, I also address his testimony regarding a comment by Jullarine, his DPW co-worker. ECF No. 36 ¶ 78. Holeman testified that Jullarine told Holeman and Tucker that "there is a different set of rules for Black employees." ECF No. 30-2 at 20. This statement, unsupported by any admissible evidence, is inadmissible hearsay that cannot be offered at trial for its truth. *See* Fed. R. Evid. 801(c); *Lewis v. Town of Waterford*, 239 F.R.D. 57, 60 (D. Conn. 2006) ("A party cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial." (internal quotation marks omitted)). In any event, even if Holeman could offer evidence of Jullarine's comment, I find it to be a "stray remark" because Holeman has pointed to no evidence that Jullarine is a decisionmaker or had anything to do with the decisional process leading to Holeman's termination. *See, e.g.*, *Argueta v. N. Shore Long Island Jewish Health Sys., Inc.*, No. 01 CV 4031 (JG), 2003 WL 22670915, at *8 (E.D.N.Y. Nov. 6, 2003) ("stray remarks in the workplace, statements by nondecisionmakers, and statements by decisionmakers unrelated to the decisional process are not by themselves sufficient to satisfy plaintiff's burden of proving pretext." (internal quotation marks omitted)). Holeman admitted that Jullarine held no supervisory role over him and did not participate in the decision to terminate him. ECF No. 36 ¶¶ 79–80; *see also* ECF No. 30-4 ¶¶ 16–17; ECF No. 30-5 ¶¶ 25–26. Accordingly, I find that Jullarine's comment is insufficient, considered either by itself or in the context of the other comments, to demonstrate pretext for discrimination.

At the third step of the *McDonnell Douglas* framework, the plaintiff must "have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (emphasis added). "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *Gallo v. Second Taxing District*, 507 F. Supp. 2d 164, 175 (D. Conn. 2007) (to prove pretext, plaintiff must show "that any lawful motives were not the only reasons *and* that Plaintiff's protected status contributed to the employer's decision" (emphasis added)). Here, as noted above, Holeman has failed to present any admissible evidence that he was subject to discrimination or that his race or color played a factor in his termination. Thus, even assuming (without deciding) that the City's alleged failure to follow its policies could be seen as some evidence that its proffered reason for terminating Holeman was pretext, Holeman has not presented any evidence that discrimination was the true reason.

Instead of providing evidence of discrimination at the third step of the *McDonnell Douglas* framework, Holeman relies on the fact that the City conceded that Holeman has made a *prima facie* case to prove discrimination based on race. ECF No. 35 at 18. "Pretext may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence or by reliance on the evidence comprising the prima facie case, without more." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994) (citations and internal quotation marks omitted). The evidence giving rise to an inference of discrimination at the *prima facie* step was merely that the City replaced Holeman with a white employee. ECF No. 30-1 at 11; ECF No. 35 at 7. Although, as noted above, such evidence may

14

support an inference of discrimination at the *prima facie* step of *McDonnell Douglas* analysis, at the third step, "[o]nce defendant proffer[s] a non-discriminatory reason for removing [the plaintiff] from her position . . . , more than evidence that she was replaced by a person of another race [is] necessary for her to carry her ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her on the basis of race." *Pleener v. New York City Bd. of Educ.*, 311 F. App'x 479, 481 (2d Cir. 2009); *Woodward v. Kaleida Health*, No. 09-cv-628S, 2012 WL 267719, at *6 (W.D.N.Y. Jan. 30, 2012) (fact that defendant replaced plaintiff with a member of a different race "is insufficient to create a genuine issue of material fact as to whether race was a motivating factor in his termination"); *Gorham v. Town of Trumbull Bd. of Educ.*, 7 F. Supp. 3d 218, 234 (D. Conn. 2014) (replacement by a member of a different race "insufficient by itself to raise an inference of discrimination"). Holeman does not allege any facts suggesting that his replacement's hiring was motivated by discrimination. The race of his replacement thus offers no proof of pretext for discrimination. *Pesok v. Hebrew Union College – Jewish Institute of Religion*, 235 F. Supp. 2d 281, 286–87 (S.D.N.Y. 2002) (granting summary judgment where plaintiff, despite being replaced by a person outside of his protected class, raised no evidence that replacement was motivated by discrimination). Without evidence of discrimination beyond the undisputed fact that the City replaced Holeman with a white employee, the record does not support a reasonable jury finding of impermissible conduct by the City.

Meanwhile, the City has presented evidence to support a reasonable inference that discrimination played no role in Holeman's termination. Seer and Collins were the decision makers with respect to both Holeman's hiring and his termination, which were separated by only a few months. *See Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is

difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring."). Moreover, Collins, who made the ultimate termination decision, is of the same protected class as Holeman. *See Meyer v. McDonald*, 241 F. Supp. 3d 379, 390–91 (E.D.N.Y. 2017) ("When the person who allegedly discriminated against plaintiff is a member of the same protected class as plaintiff, the court applies an inference against discrimination."), *aff'd*, 722 Fed. Appx. 26 (2d. Cir. 2018). These facts further "suggest that invidious discrimination was unlikely." *Grady*, 130 F.3d at 560.

Because Holeman has provided, at the third step of the *McDonnell Douglas* framework, no admissible evidence to support his claims that his membership in a protected class was a motivating factor in the City's decision to terminate him, and in light of the City's evidence supporting an inference against discrimination, I find that Holeman has failed to carry his burden to prove by a preponderance of the evidence that his race or color was a factor in his termination or that the City's proffered reasons were a pretext for discrimination.

### IV.   CONCLUSION

For the reasons above, the City's motion for summary judgment (ECF No. 30) is GRANTED.

IT IS SO ORDERED.

                                                              /s/
                                      Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        March 25, 2025